## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PEGGI MAE GARVER,                          )
                                           )
       Plaintiff,                       )
                                           )
v.                                         )      Civil Action No. 12-1781
                                           )
CAROLYN W. COLVIN, ACTING                  )      Magistrate Judge Cynthia Reed Eddy
COMMISSIONER OF SOCIAL                     )
SECURITY,                                  )
                                           )
       Defendant.                       )

## MEMORANDUM OPINION

### I.   Introduction

Plaintiff Peggi Mae Garver ("Garver") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 10 & 12. For the reasons that follow, Garver's motion for summary judgment (*ECF No. 10*) will be denied, the Commissioner's motion for summary judgment (*ECF No. 12*) will be granted, and the Commissioner's final decision will be affirmed.

### II.   Procedural History

Garver protectively applied for DIB and SSI benefits on January 21, 2010, alleging that she had become "disabled" on November 12, 2009. R. at 132, 136, 177. Pennsylvania's Bureau of Disability Determination ("Bureau") denied the applications on April 6, 2010. R. at 81, 86.

On August 12, 2010, Garver filed a request for an administrative hearing. R. at 91-94. Since the hearing request was untimely, Garver was asked to provide an explanation as to why she had not filed her request within the prescribed sixty-day limitations period. R. at 96. In a handwritten response dated August 26, 2010, Garver stated that her failure to file a timely hearing request had been attributable to her mental health. R. at 98. After reviewing Garver's letter, the Office of Disability Adjudication and Review decided to give her a hearing. R. at 100-101.

On July 14, 2011, a hearing was held in Seven Fields, Pennsylvania, before Administrative Law Judge ("ALJ") Brian W. Wood. R. at 30. Garver, who was represented by counsel, appeared and testified at the hearing. R. at 34-57. Kristen Hartman ("Hartman"), a service coordinator for Family Services of Western Pennsylvania, testified about efforts that she and her colleagues had made to ensure that Garver was adhering to her treatment regimen. R. at 58-60. Frances N. Kinley ("Kinley"), an impartial vocational expert, provided testimony about the demands of jobs existing in the national economy. R. at 61-69. In a decision dated September 23, 2011, the ALJ determined that Garver was not "disabled" within the meaning of the Act. R. at 11-24.

On November 9, 2011, Garver sought administrative review of the ALJ's decision by filing a request for review with the Appeals Council. R. at 10. The Appeals Council denied the request for review on October 26, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. R. at 1. Garver commenced this action on December 7, 2012, seeking judicial review of the Commissioner's decision. ECF Nos. 1-3. Garver and the Commissioner filed motions for summary judgment on April 10, 2013, and May 8, 2013, respectively. ECF Nos. 10 & 12. In accordance with 28 U.S.C. § 636(c)(1), the parties have

consented to have this matter resolved by a United States magistrate judge. ECF Nos. 8-9. The motions for summary judgment filed by the parties are the subject of this memorandum opinion.

## III.   Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777

3

(3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is

4

determined not to be disabled. If the claimant survives the fourth stage, the fifth,
and final, step requires the SSA to consider so-called "vocational factors" (the
claimant's age, education, and past work experience), and to determine whether
the claimant is capable of performing other jobs existing in significant numbers in
the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes

omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject

to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social

Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's

decision cannot be affirmed on a ground other than that actually relied upon by the agency in

making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67

S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of
> administrative law. That rule is to the effect that a reviewing court, in dealing
> with a determination or judgment which an administrative agency alone is
> authorized to make, must judge the propriety of such action solely by the grounds
> invoked by the agency. If those grounds are inadequate or improper, the court is
> powerless to affirm the administrative action by substituting what it considers to
> be a more adequate or proper basis. To do so would propel the court into the
> domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has

recognized the applicability of this rule in the Social Security disability context. *Fargnoli v.

Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four

corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

**IV.     The ALJ's Decision**

In his decision, the ALJ determined that Garver had not engaged in substantial gainful

activity subsequent to her alleged onset date. R. at 16. Garver was found to be suffering from

migraine headaches, gastroesophageal reflux disease ("GERD"), obesity, major depressive disorder, a disorder of the flexor tendon in her right long finger, and a history of carpal tunnel syndrome release surgery in both arms. R. at 16-17. Although the impairment in Garver's left hand related to carpal tunnel surgery had resolved and was deemed to be "non-severe," her remaining impairments were deemed to be "severe" under the Commissioner's regulations. R. at 16-17; 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Garver's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 17-19.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Garver's "residual functional capacity"[1] as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; she can stand or walk for six hours in an eight hour workday; she can sit for six hours in an eight hour workday; she can never climb ladders, ropes, or scaffolds; she can occasionally climb ramps or stairs; she can occasionally balance, stoop, kneel, crouch, or crawl; she can occasionally handle and finger with the right hand, she is right hand dominant; she can occasionally push or pull with the left upper extremity; she is able to perform simple, routine, repetitive tasks; she requires low stress work defined as occasional simple decisionmaking and occasional changes in the work setting; she cannot perform work in a fast paced production environment; she can have occasional interaction with coworkers and supervisors; and occasional interaction with the public.

R. at 19. Garver had "past relevant work"[2] experience as a baker and a cook. R. at 180, 195. Kinley classified Garver's prior positions as "semi-skilled"[3] jobs at the "medium"[4] level of

---

[1] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[2] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The

exertion. R. at 62. Since Garver was deemed to be capable of performing only "unskilled"[5] work at the "light"[6] level of exertion, it was determined that she could not return to her past relevant work. R. at 22.

Garver was born on July 1, 1972, making her thirty-seven years old on her alleged onset date and thirty-nine years old on the date of the ALJ's decision. R. at 34. She was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). She had a high school education and an ability to communicate in English. R. at 36, 192, 194; 20 C.F.R. §§ 404.1564(b)(4)-(5), 416.964(b)(4)-(5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Garver could work as an office helper, an information clerk, or a night patrol person. R. at 23. Kinley's testimony established that those jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[7] R. at 63-64.

---

Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[3] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks." 20 C.F.R. §§ 404.1568(b), 416.968(b).

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

[5] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[7] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

V.    **Discussion**

Exhibits 1A through 22F were admitted into evidence at the hearing.  R. at 33-34.

Garver's counsel informed the ALJ that "updated orthopedic records" would be available within

two weeks.  R. at 33.  The ALJ agreed to leave the record open for twenty additional days.  R. at

33.  He instructed Garver's counsel to let him know if the records could not be procured during

the allotted period of time.  R. at 33.  Exhibit 23F contains records of Garver's orthopedic

treatment between April 27, 2010, and May 4, 2010.  R. at 667-671.  The treatment records

contained within Exhibit 23F appear to be the treatment records to which Garver's counsel

referred at the hearing.

The Commissioner's regulations permit a claimant to present "new and material

evidence" to the Appeals Council in support of a request for review.  20 C.F.R. §§ 404.970(b),

416.1470(b).  The Appeals Council must consider such evidence in deciding whether to review

the decision denying the claimant's application for benefits.  *Id.*  In connection with her request

for review, Garver presented Exhibits 24F through 31F to the Appeals Council.  R. at 5-6.

Exhibit 24F contained a statement from Dr. Manoj Lekhwani, a treating psychiatrist, declaring

Garver to be temporarily incapacitated from August 27, 2011, through February 27, 2012.  R. at

672-673.  On a medical assessment form found in Exhibit 24F, Dr. Lekhwani reported that

Garver's incapacitation was attributable to generalized anxiety and major depressive disorders.

R. at 674.  Exhibits 25F through 31F contained treatment records postdating the ALJ's decision.

R. at 675-727.  In denying Garver's request for review, the Appeals Council stated that Dr.

Lekhwani's opinion was "not supported with any clinical signs or symptoms," and that the

documentary evidence in the remaining exhibits did not relate to the relevant period of time.  R.

at 2.

8

The Act authorizes judicial review only over a "final decision" of the Commissioner. *Califano v. Sanders*, 430 U.S. 99, 108, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Bacon v. Sullivan*, 969 F.2d 1517, 1519-1521 (3d Cir. 1992). A federal court has no jurisdiction to entertain a challenge to a decision by the Appeals Council denying a claimant's request for review. *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). When the Appeals Council denied Garver's request for review, the ALJ's decision became the Commissioner's "final decision" in this case. *Sims v. Apfel*, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). In determining whether that decision is "supported by substantial evidence," the Court can consider only the evidence that was available to the ALJ at the time of his decision. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 360 (3d Cir. 2011).

In order to facilitate the judicial review contemplated by the Act, an administrative law judge must explain his or her reasons for rejecting evidence favoring a claimant's position. *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 121 (3d Cir. 2000). When conflicting medical opinions appear in the record, the administrative law judge is ordinarily "free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). In doing so, however, he or she must provide adequate reasons for rejecting an assessment supporting a finding of statutory "disability" in favor of an assessment suggesting that the claimant can work. *Reefer v. Barnhart*, 326 F.3d 376, 382 (3d Cir. 2003).

Garver faults the ALJ for failing to factor Dr. Lekhwani's opinion into the residual functional capacity assessment. ECF No. 11 at 8-11. The problem with that argument is obvious. Since Dr. Lekhwani's statement was never before the ALJ in the first place, the ALJ had no opportunity to consider its probative value. The statement cannot be considered for the

purpose of determining whether the decision denying Garver's applications for benefits is
"supported by substantial evidence." *Chandler*, 667 F.3d at 360.  As noted earlier, the Court has
no jurisdiction to review the Appeals Council's decision denying Garver's request for review.
*Matthews*, 239 F.3d at 594.

The sixth sentence of § 405(g) provides that a reviewing court "may at any time order
additional evidence to be taken before the Commissioner of Social Security, but only upon a
showing that there is new evidence which is material and that there is good cause for the failure
to incorporate such evidence into the record in a prior proceeding."  42 U.S.C. § 405(g).  "[T]he
materiality standard requires that there be a reasonable possibility that the new evidence would
have changed the outcome of the [Commissioner's] determination."  *Szubak v. Secretary of
Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984).  A claimant attempting to secure
benefits under the Act must demonstrate that both his or her medically determinable impairment
(or combination of impairments) and his or her inability to work have lasted (or are expected to
last) for the statutory twelve-month period.  *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122
S.Ct. 1265, 152 L.Ed.2d 330 (2002).  Since Dr. Lekhwani's statement declared Garver to be
incapacitated for a period of only six months, it was facially insufficient to support a finding that
she was "disabled."  R. at 673.  For this reason, it is doubtful that Exhibit 24F could satisfy the
materiality standard.

Even if it is assumed that Dr. Lekhwani's opinion is "material," Garver has failed to
demonstrate that she had "good cause" for failing to submit it to the ALJ.  The statement was
signed on August 27, 2011.  R. at 672.  Although the twenty-day period permitted by the ALJ
had already expired by that time, the testimonial record suggests that the ALJ was willing to
cooperate with Garver's counsel in order to complete the record.  R. at 33.  Garver does not

10

explain why she failed to procure Dr. Lekhwani's statement at a time when it could have been considered by the ALJ. ECF No. 11 at 8-11. Consequently, she is not entitled to a sentence-six remand on the basis of Exhibit 24F. *Chandler*, 667 F.3d at 360.

"An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." *Szubak*, 745 F.2d at 833. The period of time relevant to this case ended on September 23, 2011, when the ALJ issued his decision. R. at 23-24. Exhibits 25F through 31F contain records of treatment that Garver received in 2012. R. at 675-727. Those records are relevant only to the extent that they shed light on Garver's condition on or before September 23, 2011. *Reilly v. Office of Personnel Management*, 571 F.3d 1372, 1381-1382 (Fed.Cir. 2009); *Pollard v. Halter*, 377 F.3d 183, 193-194 (2d Cir. 2004); *Ivy v. Sullivan*, 898 F.2d 1045, 1049 (5th Cir. 1990); *Smith v. Bowen*, 849 F.2d 1222, 1225-1226 (9th Cir. 1988); *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). Garver points to nothing in the relevant exhibits which suggests that her condition during the disputed period of time was worse than that reflected in the ALJ's residual functional capacity assessment. ECF No. 11 at 8-11. Therefore, the documentary evidence contained in Exhibits 25F through 31F does not justify a sentence-six remand. *Szubak*, 745 F.2d at 833. This case must be decided solely on the basis of the evidence presented to the ALJ. *Matthews*, 239 F.3d at 593.

Garver started to work as a baker for a donut shop in March 1995. R. at 180, 195. She left that position in November 2001 to be a cook for a nursing home. R. at 180, 195. Garver continued to work as a cook until November 12, 2009, when she was discharged for frequent

call-offs. R. at 36-37. At the hearing, Garver attributed her call-offs and consequent termination to physical abuse allegedly perpetrated by her common-law husband. R. at 36-37.

In order to receive unemployment compensation benefits under Pennsylvania law, a claimant must be "able to work and available for suitable work." 43 PA. STAT. § 801(d)(1). When questioned about her source of income, Garver testified that she was receiving unemployment compensation benefits. R. at 35. She explained that she had been applying for part-time positions in order to retain her benefits. R. at 52. Garver further stated that her impairments would prevent her from working for more than one to two days per week. R. at 35.

An administrative law judge must give serious consideration to a claimant's subjective complaints whenever the record establishes the existence of a medically determinable impairment that could reasonably be expected to cause the symptoms described in the claimant's testimony. *Mason v. Shalala*, 994 F.2d 1058, 1067-1068 (3d Cir. 1993). Throughout the hearing, Garver provided detailed testimony about the impact that her impairments had on her ability to work. R. at 36-57. The content of the ALJ's residual functional capacity assessment indicates that he seriously considered Garver's testimony.

On July 19, 2006, Garver underwent surgery to alleviate the symptoms of carpal tunnel syndrome in her right hand. R. at 314-315. A similar operation was performed on her left hand on September 12, 2007. R. at 312-313. Garver testified that she needed to exercise her right wrist whenever she used a knife or a fork for long periods of time. R. at 41. She responded in the affirmative when asked whether she could secure the buttons and zippers on her clothing. R. at 41. Garver acknowledged that the surgery performed in 2007 had resolved the problems in her left wrist. R. at 42. Although Garver complained of pain in her left elbow, she stated that

12

her left hand was "fine." R. at 61. The ALJ restricted Garver to occasional handling and
fingering with her right hand and occasional pushing and pulling with her left arm. R. at 19.

      The documentary record confirms that Garver suffered from migraine headaches during
the period of time in question. R. at 642. On February 19, 2010, Dr. Vicky Leo reported that
Garver's migraine headaches were sometimes "exacerbated by increased stress." R. at 644. At
that time, the condition was described as "stable." R. at 645. Garver was provided with a
prescription for Maxalt and instructed to stop taking over-the-counter Excedrin. R. at 645-646.
As of October 20, 2010, she was only experiencing one to two migraine headaches per month.
R. at 652. At the hearing, Garver testified that she could no longer afford her medications, and
that she was getting two to three migraine headaches per week. R. at 46. The ALJ addressed the
evidence relating to Garver's migraine headaches by precluding jobs that would increase her
stress and eliminating environments requiring individuals to work at a fast pace. R. at 19, 21.

      Garver testified that she had been suffering from pain in her lower back since reaching
the age of fifteen. R. at 45. She asserted that a magnetic resonance imaging ("MRI") scan had
detected a bulging disk in her back, but that nothing could be done to alleviate her symptoms. R.
at 46. Garver also stated that she had "go[ne] to a chiropractor every now and then to relieve
some of the pain." R. at 46. Because the documentary record lacked objective evidence of a
back condition, the ALJ concluded that Garver had no medically determinable back impairment.
R. at 17. Despite that conclusion, the ALJ accounted for Garver's complaints of back pain by
limiting her to work at the "light" level of exertion. R. at 17. The ALJ's residual functional
capacity assessment also included several postural limitations designed to alleviate symptoms
that are typically associated with back problems. R. at 19.

Garver's strained relationship with her common-law husband, which involved a dispute

over custody of the couple's three children, has caused her to suffer from depression and anxiety.

R. at 662-665. Dr. Patricia Pepe, a licensed psychologist selected to evaluate Garver in

connection with the custody dispute, observed on August 3, 2010, that Garver's "anxiety [wa]s

intensified around others." R. at 663. At the hearing held before the ALJ, Garver testified that

interaction with others would sometimes cause her to experience panic attacks. R. at 39. The

ALJ addressed those concerns by restricting Garver to a range of work involving only occasional

contact with supervisors, co-workers, and members of the general public. R. at 19.

Dr. Sandra Banks, a non-examining psychological consultant, opined on March 25, 2010,

that Garver was "able to meet the basic mental demands of competitive work on a sustained basis

despite the limitations resulting from her impairments." R. at 455. In the narrative portion of her

consultative report, Dr. Banks explained:

> Based on the evidence in file, the claimant would be able to perform simple,
> routine, repetitive work in a stable environment. She can make simple decisions.
> She could carry out very short and simple instructions. She could be expected to
> maintain regular attendance and be punctual. Her ADLs and social skills are
> functional. She can sustain an ordinary routine without special supervision. She
> could function in production-oriented jobs requiring little independent decision
> making. The limitations resulting from the impairments do not preclude the
> claimant from performing the basic mental demands of competitive work on a
> sustained basis.

R. at 455. The ALJ afforded "great weight" to Dr. Banks' opinion in determining Garver's

residual functional capacity. R. at 455.

The detailed findings made by the ALJ confirm that he carefully considered the effect

that Garver's impairments would have on her ability to work. The ALJ was not required to

credit Garver's subjective complaints in every respect. *Chandler*, 667 F.3d at 363. The record

indicates that Garver's impairments did not preclude her from engaging in substantial gainful

14

activity during the relevant period of time. On April 2, 2008, Dr. Leo reported that Garver's migraine headaches required her to miss work anywhere from four to six times per year. R. at 519. Kinley testified that four to six absences per year would not normally result in the termination of an individual's employment. R. at 64. The ALJ's factual findings are clearly grounded in the evidentiary record.

A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the question eliciting that testimony describes all of the claimant's functional limitations. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Where a credibly established limitation is not conveyed to the vocational expert, there is a danger that he or she will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555 (3d Cir. 2004). The ALJ's hypothetical questions to Kinley made reference to every limitation included in the subsequent residual functional capacity finding. R. at 62-63. Since the underlying residual functional capacity finding was "supported by substantial evidence," Kinley's testimony satisfied the Commissioner's burden at the fifth step of the sequential evaluation process. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 206 (3d Cir. 2008); *Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005).

Garver appears to question the veracity of Kinley's testimony. Relying on the Dictionary of Occupational Titles ("DOT"), Garver asserts that an individual working as an office helper or an information clerk would be required to engage in *frequent* handling and fingering with his or her dominant hand. ECF No. 11 at 12. The ALJ determined that Garver, who is right-handed, could engage in only *occasional* handling and fingering with her right hand. R. at 19. Garver posits that this inconsistency between the job descriptions contained in the DOT and the

15

testimony provided by Kinley requires a remand for further proceedings. ECF No. 11 at 12. In addition, Garver contends that the DOT does not recognize the "night patrol" position described by Kinley at the hearing. *Id.*

The Commissioner's regulations take administrative notice of the information contained in the DOT. 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1). Nonetheless, a vocational expert's testimony need not be based *solely* on the DOT's job descriptions. *Conn v. Astrue*, 852 F.Supp.2d 517, 528-529 (D.Del. 2012). Formal job descriptions do not always mirror the duties that employees are expected to perform and the conditions in which they are required to work. *Garcetti v. Ceballos*, 547 U.S. 410, 424-425, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). The primary function of vocational expert testimony is to supplement generic job descriptions with information about what employers in the national economy actually expect of their employees on a day-to-day basis. 20 C.F.R. §§ 404.1566(e), 416.966(e). As a vocational expert, Kinley was qualified to give testimony based on her education, training and experience. *Conn*, 852 F.Supp.2d at 528-529. Garver cannot impugn Kinley's testimony merely by asserting that it accounted for information existing apart from the job descriptions found in the DOT. *Id.*

Kinley stated that, to the best of her knowledge, her testimony was consistent with the information contained in the DOT. R. at 65. Even if it is assumed that her testimony actually *conflicted* with the DOT's job descriptions, a remand is not required in this case. *Jones*, 364 F.3d at 506, n. 6. The United States Court of Appeals for the Third Circuit has explained that inconsistencies between a vocational expert's testimony and the job descriptions contained in the DOT "need not be fatal if substantial evidence exists in other portions of the record that can form an appropriate basis to support the result" reached by the Commissioner. *Rutherford*, 399 F.3d at 557. In response to the ALJ's first hypothetical question, which had described an individual who

could engage in frequent handling and fingering with his or her dominant hand, Kinley testified that the hypothetical individual could perform the duties of 105,000 office helper positions existing in the national economy. R. at 63. When the ALJ asked Kinley to assume that the hypothetical individual could engage in only occasional handling and fingering with his or her dominant hand, Kinley reduced the number of available office helper positions to somewhere between 75,000 and 80,000. R. at 63-64. The previous figures given for the information clerk and night patrol positions remained unchanged. R. at 63-64. The differences between Kinley's testimony about the requirements of particular jobs and the official job descriptions relied upon by Garver are reflected in the 25,000 to 30,000 office helper positions eliminated by Garver's inability to engage in frequent handling and fingering with her right hand.

## VI.   Conclusion

The Commissioner's decision denying Garver's applications for DIB and SSI benefits is "supported by substantial evidence." 42 U.S.C. § 405(g). Garver's motion for summary judgment (*ECF No. 10*) will be denied, and the Commissioner's motion for summary judgment (*ECF No. 12*) will be granted. In accordance with the fourth sentence of § 405(g), the Commissioner's "final decision" in this case will be affirmed. Garver is insured for benefits under Title II through December 31, 2014. R. at 14, 16. If she believes that the information contained in Exhibits 24F through 31F would support a finding of disability, she remains free to file new applications for DIB and SSI benefits.

Cynthia Reed Eddy
United States Magistrate Judge

cc:   All counsel of record

17